**NEW YORK LIFE INSURANCE COMPANY**

v.

**Jane DESHOTEL and June G. Smith.**

**Civil Action No. 94–3278.**

United States District Court, E.D. Louisiana.

Nov. 21, 1996.

---

Virginia N. Roddy, Preaus, Roddy & Krebs, New Orleans, LA, and Teresa Rose Young, Metairie, LA, for plaintiff.

Gregory P. Marceaux, Thomas J. Gayle, Bergstedt & Mount, Lake Charles, LA, James T. Flanagan, Mollere & Flanagan, Metairie, LA, and Malvern F. Driscoll, New Orleans, LA, for defendants.

### *ORDER DENYING MOTION TO ALTER OR AMEND "AMENDED JUDG-MENT" AND GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY AND PERMA-NENT INJUNCTIONS*

VANCE, District Judge.

Before the Court is the motion of defendant June G. Smith ("Mrs. Smith") to alter or amend this Court's Amended Judgment of June 25, 1996. Also before the Court is the motion of plaintiff New York Life Insurance Company ("New York Life") for preliminary and permanent injunctions restraining and enjoining Mrs. Smith, individually and as administrator of the Succession of Rodney G. Smith, as well as the United States District Court for the Western District of Louisiana and the Fifteenth Judicial District Court for the Parish of Lafayette, from further prosecuting three civil actions filed by Mrs. Smith against New York Life and/or Lynwood Broussard ("Broussard"). For the reasons stated below, the motion to alter or amend the amended judgment is DENIED, and the *motion for preliminary and permanent injunctions* is GRANTED in part and DE-NIED in part.

### I. BACKGROUND

Between 1964 and 1974, Rodney Smith purchased five life insurance policies from New York Life. The original beneficiary on each of the five policies was his wife, Mrs. Smith. In September 1991, the Smiths separated after thirty-one years of marriage. They remained in contact until Mr. Smith's death in May 1994, with Mrs. Smith often supporting her husband financially throughout the period of separation.

During this period of separation, Mr. Smith became reacquainted with Jane Deshotel ("Ms. Deshotel"), a high school and college friend from near his hometown of Welsh, Louisiana. After Mr. Smith's diagnosis with terminal cirrhosis of the liver in August 1993, Mr. Smith and Ms. Deshotel's friendship continued and strengthened to the point that Smith spent the 1993 holidays with Ms. Deshotel's family in Elton, Louisiana.

From the time of his diagnosis until his death in May 1994, Mr. Smith changed the beneficiaries on his five life insurance policies on four separate occasions. On the penultimate change, he named Ms. Deshotel as sole beneficiary. However, Mrs. Smith alleges that, before he died, Mr. Smith made one final change to his policies, designating her as the sole beneficiary. According to Mrs. Smith, Mr. Smith signed this final change of beneficiary form and had his half-brother, Donald W. Kelley, submit the form to the office of Lynwood Broussard ("Broussard"), a New York Life agent in Lafayette, Louisiana. Broussard's office manager, Kimberly Viator, admits that she received the change

of beneficiary form. However, sometime after Ms. Viator received the form, it was misplaced by either New York Life or Broussard and never reached New York Life's Customer Service Office. Consequently, at the time of Mr. Smith's death in May 1994, the records at New York Life's Customer Service Office indicated that Ms. Deshotel was the sole beneficiary of the policies.

After Mr. Smith's death, New York Life received claims for the proceeds from Mr. Smith's five life insurance policies from both Mrs. Smith and Ms. Deshotel. As a result of these competing claims, in October 1994, New York Life instituted an action for interpleader in this Court under Federal Rule of Civil Procedure 22, naming as defendants both Mrs. Smith and Ms. Deshotel. Neither Mrs. Smith nor Ms. Deshotel filed any counterclaims against New York Life in the interpleader action.

Instead of filing counterclaims against New York Life in the interpleader action, Mrs. Smith elected to file three separate negligence lawsuits in the Fifteenth District Court in Lafayette Parish while the interpleader action was pending before this Court:

1) On April 20, 1995, Mrs. Smith and the Succession of Rodney Smith sued New York Life Insurance Company in *June G. Smith v. New York Life Insurance Company)* ("the first delictual action").

2) On April 26, 1995, Mrs. Smith and the Succession of Rodney Smith sued Lynwood Broussard in *June G. Smith v. Lynwood Broussard* ("the second delictual action").

3) On October 30, 1995, Mrs. Smith, in her capacity as succession representative, sued New York Life Insurance Company and Lynwood Broussard in *Succession of Rodney G. Smith v. New York Life Insurance Company and Lynwood Broussard* ("the third delictual action").

Neither New York Life nor this Court was informed by Mrs. Smith of the existence of any of these three delictual actions during the pendency of the interpleader action. Eventually, the first and third delictual actions were removed to the United States District Court for the Western District of Louisiana. The second delictual action remains in state court.

Each of the three petitions seeks recovery on the theory that the final change of beneficiary form was negligently handled by New York Life, Broussard, or both. Each of the three petitions expressly references the interpleader action and seeks damages for attorneys' fees related to the interpleader action. *See* Record Doc. No. 57, Exhibits P–3, P–4, and P–6, Complaints. Mrs. Smith states that these actions were filed "in an abundance of caution," even though she realized that "any delictual claim she may eventually have against New York Life or Broussard was premature." Record Doc. No. 59 at 5. Mrs. Smith contends that her delictual claims were "inchoate," "immature" and might never ripen into an actual claim, because this Court had not yet determined who rightfully owned the proceeds of the insurance policy through a decision in the interpleader action. *Id.* at 7. As a result, Mrs. Smith elected to withhold service of her three delictual claims until the resolution of the interpleader action. *Id.* at 6–7.

After extensive discovery and briefing in the interpleader action, this Court issued an Order on September 7, 1995 granting summary judgment in favor of New York Life and permanently "enjoining or restraining defendants Jane Deshotel and June G. Smith from instituting or prosecuting any proceedings against New York Life in any state or federal court pertaining to the proceeds of [the] life insurance policies." On September 12, 1995, the Court issued an order granting summary judgment in favor of Ms. Deshotel, decreeing her the owner of the insurance proceeds. On September 26, 1995, Mrs. Smith filed a motion for a new trial, which was treated as a motion to alter or amend the judgment and was denied. Mrs. Smith appealed this Court's ruling to the United States Fifth Circuit Court of Appeals, which affirmed this Court's decision on March 22, 1996. Mrs. Smith moved for a rehearing, which the Fifth Circuit denied on April 19, 1996.

On May 21, 1996, this Court entered judgment in favor of Ms. Deshotel. As a result of a clerical mistake, the May 21, 1996 judgment did not include a permanent injunction

against the defendants. On June 25, 1996, this Court entered an amended judgment *sua sponte* pursuant to Federal Rule of Civil Procedure 60(a) to correct this clerical mistake by adding to the original judgment an order permanently "enjoining or restraining defendants, Jane Deshotel and June G. Smith, from instituting or prosecuting any proceedings against New York Life Insurance Company in any state or federal Court pertaining to the proceeds of [the] life insurance policies...." Record Doc. No. 33 at 1.

As soon as the interpleader action came to its final resolution, Mrs. Smith elected to proceed with her delictual actions against New York Life and/or Broussard. In the first of the three actions, *Jane G. Smith v. New York Life*, New York Life filed an "Answer and Counterclaim," in which it alleged, as a defense to the action, that the delictual claim is barred, "based upon the preliminary and permanent injunctions entered by the Hon. Sarah Vance, Judge, U.S.D.C. Eastern District of Louisiana on October 12, 1994 and September 7, 1995." New York Life sought damages in a counterclaim against Mrs. Smith for her alleged violation of this Court's permanent injunction in bringing the delictual action. Record Doc. No. 54, Exhibit D, New York Life Answer and Counterclaim, at 6.

In response to New York Life's position, Mrs. Smith filed this motion to alter or amend the Court's amended judgment on July 1, 1996. Mrs. Smith requested that this Court modify its amended judgment so that it unequivocally states that the injunction does not preclude Mrs. Smith or Ms. Deshotel "from bringing an action against New York Life or any other party based on any viable theory of recovery, so long as that action is not directed at the proceeds of [the] life insurance policies." Record Doc. No. 54 at 5. In short, Mrs. Smith wants this Court to clarify that the Court's earlier injunction does not preclude her from bringing any of her three delictual actions.[1] New York Life contends that Mrs. Smith is not entitled to the relief she seeks because her motion to

amend the amended judgment is untimely, the injunction does not require modification, and Mrs. Smith's delictual claims are barred by res judicata because they should have been raised as compulsory counterclaims in the interpleader action.

On July 19, 1996, New York Life filed a motion for a preliminary and permanent injunction enjoining Mrs. Smith from pursuing her three delictual actions. In support of its motion, New York Life contends that it will suffer immediate and irreparable loss if it is forced to defend claims that should have been asserted as counterclaims in the interpleader action and that are now barred. Mrs. Smith argues that this Court lacks subject matter jurisdiction over New York Life's motion and that the delictual claims were not ripe until the interpleader action was decided. Thus, Mrs. Smith argues that the delictual claims *could not* have been properly brought during the interpleader proceedings, let alone that they *had to* be brought, as New York Life claims. The Court resolves these issues as follows.

## II. LEGAL ANALYSIS

### A. Timeliness of Mrs. Smith's Motion to Amend "Amended Judgment"

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Failure to serve a motion to alter or amend a judgment within the ten-day limit deprives the district court of jurisdiction over the motion. *See United States Leather, Inc. v. H & W Partnership*, 60 F.3d 222, 225 (5th Cir.1995). The ten-day requirement is so strict that it cannot be waived even by the consent of the parties or by a rule of the district court. *Id.*

New York Life contends that Mrs. Smith's motion to alter or amend the amended judgment is untimely because it was not filed within ten days of this Court's Judg-

---

1. Mrs. Smith has clarified that she is not wedded to the language of her proposed injunction. Essentially, she would be satisfied with any injunction which clarified that this Court's earlier injunction does not preclude her from bringing any of her three delictual actions. *See* Record Doc. No. 61 at 2.

ment of May 21, 1996. While New York Life recognizes that Mrs. Smith filed her motion within ten days of this Court's Amended Judgment of June 25, 1996, New York Life maintains that the Court's modifications of June 25, 1996 do not affect the underlying judgment and that the ten-day period should be counted from the date of the Court's Original Judgment of May 21, 1996. The Court disagrees and finds that Mrs. Smith's motion is timely under Rule 59(e).

While the Fifth Circuit has not yet expressly ruled on the issue, those courts that have considered it have held that Rule 59(e) applies both to motions to amend an original judgment and to motions to amend an amended judgment. *See, e.g., Munden v. Ultra–Alaska Associates,* 849 F.2d 383, 386 (9th Cir.1988) (ten-day period under Rule 59(e) applies to amended judgment as well as to original judgment). As the Ninth Circuit has pointed out, to hold otherwise would make "an amended judgment ... invincible from question by anything other than a motion under Federal Rule of Civil Procedure 60 or an appeal." *Id.* This point is particularly pertinent here because Mrs. Smith has moved to amend the part of the Court's judgment that was added by the Court *sua sponte* on June 25, 1996. As plaintiff rightfully points out, it would simply make no sense to start counting the ten-day period from the May 21, 1996 date when the language at issue did not even appear in the Court's judgment until the Court amended it on June 25.

New York Life cites a number of cases for the proposition that "[c]orrections under Rule 60(a) do not affect the underlying judgment." *International Controls Corporation v. Vesco,* 556 F.2d 665 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *see also In re West Texas Marketing Corporation,* 12 F.3d 497, 503 (5th Cir.1994); *Harcon Barge Company, Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 668–69 (5th Cir.), *cert. denied,* 479 U.S.

930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986); *Matter of Cobb,* 750 F.2d 477, 479 (5th Cir. 1985). New York Life reasons from this that the ten-day period of Rule 59(e) should be counted from the date of the original judgment, as opposed to the date of the amended judgment. New York Life's reliance on these cases is unfounded. None of the cases cited deals with motions under Rule 59(e) to amend an already amended judgment, as this case does. More importantly, New York Life's argument would lead to the conclusion that Mrs. Smith would have no opportunity under any circumstance to move to amend the Court's amended judgment. The Court rejects this result, as the Ninth Circuit did in *Munden,* and finds that the ten-day period for filing motions to alter or amend an amended judgment under Rule 59(e) begins as of the date of entry of the amended judgment. Accordingly, since the Court's amended judgment was entered on June 25, 1996, the ten-day period did not expire until July 10, 1996.[2] Mrs. Smith's motion to amend the amended judgment was timely filed on July 1, 1996.

### B. The Maturity of the Three Delictual Claims

New York Life predicates both its opposition to Mrs. Smith's motion to amend the amended judgment and its own motion for injunctive relief on the argument that the delictual actions are barred by res judicata, in that they should have been brought as compulsory counterclaims in the interpleader action. Mrs. Smith contends that her delictual claims were not ripe until this Court decided the interpleader action and further contends that they fall under an exception to the general rule on compulsory counterclaims. The Court finds that all three delictual claims had matured when the interpleader action was pending.

Mrs. Smith's ripeness argument is misplaced for a number of reasons. First, the facts that form the basis of each of the three

---

**2.** Under Federal Rule of Civil Procedure 6(a), "[w]hen the period of time prescribed or allowed [by the Federal Rules] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule ... 'legal holiday' includes ... Indepen-

dence Day." Fed.R.Civ.P. 6(a). The Court's amended judgment issued on Tuesday, June 25, 1996. Applying the computation mandated by Rule 6(a), which excludes Saturdays, Sundays, and the July 4th holiday, the ten-day period expired on July 10, 1996.

complaints in the delictual actions all took place before New York Life filed the interpleader action. Further, the alleged injury that resulted when the beneficiary form was lost or misplaced was sufficient to support a damage action under Louisiana law.[3] See *Harvey v. Dixie Graphics, Inc.* 593 So.2d 351, 354 (La.1992) (plaintiff need not sustain full quantum of damages in order to have a right of action in a delictual claim). Although Mrs. Smith may not have realized the full extent of her damages at the time the interpleader suit was filed, she immediately began to incur attorney's fees, which were actual damages. *Id.* On these facts, her delictual action was ripe under Louisiana law. *Id.*

Second, because the delictual claims were independent of any claims to the insurance proceeds under the policies, there was no need for a determination by this Court as to who owned the insurance proceeds before the delictual actions could be pursued. It is important to recognize that the delictual claims and the interpleader claims are legally independent of each other in that the former are tort claims, while the latter are contract claims. *See Potter v. First Fed. Savings & Loan Association of Scotlandville,* 615 So.2d 318, 322 (La.1993) (when tort and contract claims arise out of the same set of circumstances, plaintiffs may seek redress for both, but each is treated separately); *see also June G. Smith v. New York Life Insurance Company,* Civil Action No. 6:96–1348, consolidated with 96–1521 (W.D.La. Oct. 3, 1996). Quite simply, Mrs. Smith is wrong in asserting that had this Court ruled in her favor in the interpleader action, her negligence claims against New York Life would have evaporated. Regardless of how this Court decided the interpleader action, Mrs. Smith would have had a claim resulting from any alleged negligence associated with the loss of the policies.

Furthermore, the Court is not persuaded by Mrs. Smith's argument that the present situation is analogous to a malicious prosecution case. In a malicious prosecution action,

the focus is on the validity of the underlying suit against the plaintiff, which is the sole cause of any damages. For this reason, Louisiana law requires that the underlying action be terminated in favor of the plaintiff as a prerequisite to filing an action for malicious prosecution. *Trentecosta v. Beck,* 677 So.2d 1013, 1015 (4th Cir.1996). The rationale for this prerequisite is that there are no damages if the underlying case against the plaintiff is successful. These negligence actions, on the other hand, are entirely different.

The focus here is solely on the defendant's alleged negligence and whether that negligence caused any damages. *Bunge Corporation v. GATX Corporation,* 557 So.2d 1376, 1382 (La.1990). The allegedly negligent behavior in these three delictual actions was the loss of the change of beneficiary form, not simply the prosecution of the interpleader action. Thus, unlike the malicious prosecution scenario, damages would accrue regardless of the outcome of the interpleader action. Accordingly, this Court finds that the negligence claims were mature at the time of the interpleader action.

## C. Res Judicata and Compulsory Counterclaims

The question remains, however, whether the three claims are barred by res judicata as compulsory counterclaims. It is well settled that under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (emphasis added). While it is clear that none of the three delictual claims were actually raised in the interpleader action, New York Life maintains that they are precluded because they should have been raised as compulsory counterclaims in the interpleader action. As New York Life correctly points out, "[a] counterclaim which is compulsory but is not brought is thereafter

---

**3.** The Court notes that Judge Tucker L. Melancon has already ruled on this issue as to these parties. *See June G. Smith v. New York Life Insurance Company,* Civil Action No. 96–1348, consolidated with 96–1521 (W.D.La. Oct. 3, 1996). The Court agrees entirely with that well-reasoned and well-written opinion concerning the invalidity of Mrs. Smith's ripeness arguments.

barred." *McDaniel v. Anheuser–Busch, Inc.,* 987 F.2d 298, 304 (5th Cir.1993).

In the earlier, equitable interpleader practice, the existence of a counterclaim by a claimant against the stakeholder defeated interpleader jurisdiction. *See* C. Wright, Handbook of the Law of Federal Courts § 74, at 364 (3d ed. 1976). However, it "now seems to be settled that (Fed.R.Civ.P.) Rule 13 which provides for compulsory and permissive counterclaims is applicable to interpleader suits." *Libby, McNeill, and Libby v. City National Bank,* 592 F.2d 504, 507 (9th Cir.1978) (quoting *Dakota Livestock Company v. Keim,* 552 F.2d 1302, 1307 (8th Cir. 1977)).[4] Rule 13(a) provides that a counterclaim is compulsory if it "arises out of the transaction or occurrence" that is the subject matter of the plaintiff's claim.[5] In the Fifth Circuit, the test used to determine whether a claim arises out of the same transaction or occurrence is the logical relation test. *See Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN,* 747 F.2d 958, 964 (5th Cir.1984), *cert. denied sub nom., Van Weelde Brothers Shipping Ltd. v. I.N.C.A.S.,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985). Under that test, a claim is a compulsory counterclaim if it arises out of the same "aggregate of operative facts" as the claim in the original demand. *See Plant v. Blazer Financial Services, Inc. of Georgia,* 598 F.2d 1357, 1361 (5th Cir.1979); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Company,* 426 F.2d, 709, 715 (5th Cir.1970).

Applying the logical relationship test to the claims in question here reveals that the delictual claims are compulsory in character.

This follows because the same aggregate of operative facts, New York Life's alleged loss of the change of beneficiary form, is involved in both Mrs. Smith's contract claim in the interpleader action and her negligence claims in the delictual actions. The Court reaches this conclusion in light of the following facts:

In paragraphs 13 and 14 of the Interpleader Complaint, New York Life alleged:

New York Life was advised that [the change of beneficiary form dated March 11, 1994] had been turned over to a New York Life agency office on May 10, 1994 and that the form was then forwarded to New York Life's Dallas Customer Service office for processing. New York Life has no record of the submission or processing of the March 11, 1994 change of beneficiary form.

The issue of New York Life's and/or Mr. Broussard's alleged loss of the change of beneficiary form—which is the basis of the present delictual actions—was undoubtedly central to the interpleader proceedings. This is perhaps best illustrated by Mrs. Smith's own admission during the interpleader proceedings that "[h]ad New York Life not lost Smith's change of beneficiary form there would probably have been no need for interpleader." June Smith's Opposition Memorandum to Motion for Summary Judgment of New York Life at p. 2; *see also* June Smith's Reply to Memorandum of New York Life Insurance Company as to Attorney Fees at 2 ("but for New York Life's loss of the [change of beneficiary] form, interpleader would have been unnecessary"). Similarly, in another brief in the interpleader action, Mrs. Smith argued that "[t]he *admitted and*

**4.** While the Fifth Circuit has yet to decide explicitly that the rule on compulsory counterclaims applies to interpleader actions, a footnote in a recent Fifth Circuit decision presumes that it does. *See New York Life Insurance Company v. Brown,* 84 F.3d 137, 144 n. 9 (5th Cir.1996). Moreover, there is at least one Eastern District of Louisiana case in which counterclaims in an interpleader action were held to be compulsory under Rule 13. *See First Banquers Holding Company v. Federal Reserve Bank of Atlanta,* 1990 WL 103117 (E.D.La., July 16, 1990).

**5.** Fed.R.Civ.P. 13(a) provides:
   **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has

against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13. Fed.R.Civ.P. 13(a).

*undisputed* facts in this case clearly demonstrate New York Life's fault [in losing the change of beneficiary form]." (emphasis in original). June Smith's Reply to Memorandum of New York Life Insurance Company as to Attorney Fees at 3. Finally, in Mrs. Smith's memorandum in support of her motion for summary judgment in the interpleader action, she stated verbatim many of the allegations contained in the petitions in the delictual actions and specifically alleged that "[t]here is no doubt the change of beneficiary form was received by the New York Life Agent, Lynwood Broussard who was acting for and on behalf of New York Life and whose actions are imputable to New York Life...." June Smith's Memorandum in Support of Motion for Summary Judgment at 1–3 and 6–7. In short, there can be no doubt that the interpleader and the delictual actions arise out of the same "aggregate of operative facts." The delictual claims therefore should have been raised as compulsory counterclaims.

▉ New York Life also contends that all three delictual actions are barred by res judicata. Federal law determines the res judicata effect of a prior federal court judgment. *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1172 (5th Cir.1992). Under the law of the Fifth Circuit, res judicata bars a second proceeding when four separate conditions are met: (1) the second action involves the same parties as the first action, or their privies; (2) the judgment in the first action was rendered by a court of competent jurisdiction; (3) the prior action was concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994). If these four conditions are met, then res judicata bars relitigation not only of issues that *were* raised in the prior action, but also of issues that *could have been* raised in the prior action. *Id.*

▉ The parties do not dispute that this case involves a final judgment on the merits made by a court of competent jurisdiction. Further, the Court finds that the delictual claims arise out of the same claim or cause of action as the claims in the original action.

For res judicata purposes, the identical issues need not have been actually raised in the original action; rather, the test is whether the right, claim, or theory of recovery sought to be asserted arises out of "all or any part of the transaction, or series of connected transactions" out of which the first action arose. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984). Thus, the rule applies to claims that should have been asserted as compulsory counterclaims, as well as to those that were actually asserted in the original action. It is not surprising, therefore, that the Fifth Circuit has held that the res judicata requirement that the second suit involve the same cause of action as the first is coterminous with the scope of the compulsory counterclaim rule. *See Dillard v. Security Pacific Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (for res judicata, "whether the second suit involves the same cause of action ... depends ... upon the scope of the compulsory counterclaim rule.") As discussed earlier, the three delictual actions are based upon the "same aggregate of operative facts" as the interpleader action. They therefore satisfy the res judicata requirement that the suits involve the same claim or cause of action.

▉ As noted, for an action to be precluded by res judicata, it must also involve the "same parties" or their privies as the original action. To satisfy this identity element, the parties need not be identical to the parties in the first action. *See Russell*, 962 F.2d at 1173. Res judicata may apply to a nonparty, as long as it is in "privity" with a named party to the original judgment. The test for privity, however, is somewhat circular. As the Fifth Circuit has noted, "[a]s the preclusive effects of judgments have been expanded to include nonparties in more and more situations ... it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." *Russell*, 962 F.2d at 1173 (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4449, at 418 (1981)); *see also Southwest Airlines Company v. Texas International Airlines, Inc.*, 546

F.2d 84, 95 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977) ("privity is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion."). In short, the privity requirement necessitates a close factual examination of the relationships of the parties and a judgment call concerning the appropriateness of preclusion in light of those relationships.

There are three generally recognized categories of nonparties who are considered to be in privity with a party to a prior action: (1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a nonparty whose interests were adequately represented by a party to the original action. *See generally* 18 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction §§ 4451, 4454–57, and 4462 (1981 & Supp.1996); *Southwest Airlines Company v. Texas International Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.1977). This case focuses on the third category.

In relation to the third category, the Fifth Circuit has held that "[a] non-party ... is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative." *Eubanks v. FDIC,* 977 F.2d 166, 170 (5th Cir.1992) (citing *Meza v. General Battery Corp.,* 908 F.2d 1262, 1266 (5th Cir.1990)). Moreover, the Fifth Circuit has stated that parallel interests are necessary but not sufficient to establish privity. *See Eubanks,* 977 F.2d at 170 (privity "requires more than a showing of parallel interests—it is not enough that the non-party be interested in the same questions or proving the same facts"). For a nonparty to be the original party's "virtual representative," there must be "more than a showing of parallel interest, or, even, the use of the same attorney in both suits." *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1175 (5th Cir. 1987).

In the first delictual action, *June G. Smith v. New York Life Insurance Company,* the action was brought on behalf of June G. Smith individually and the Succession of Rodney G. Smith. There can be no doubt that the identity requirement of res judicata is satisfied as to Mrs. Smith in this suit, since both she and New York Life were parties to the original interpleader action. However, the Succession of Rodney G. Smith's claim in the first delictual action presents a more difficult question.

The Court concludes that the interests of the Succession were sufficiently aligned with those of Mrs. Smith in the interpleader action so as to bind the Succession. While the Court notes that there is authority for the proposition that res judicata does not generally apply in situations in which a party appears in one action in an individual capacity and in a subsequent action in a representative capacity, *see Clark v. Amoco Production Co.,* 794 F.2d 967, 972 (5th Cir.1986), the Court finds in this case that the interests of the Succession were *identical* to those of Mrs. Smith, individually. This follows because under Rodney G. Smith's will, Mrs. Smith would be the sole beneficiary of any recovery made by the Succession.[6] Thus, for purposes of the delictual actions, Mrs. Smith and the Succession are one and the same. *Cf. Robinson v. National Cash Register Company,* 808 F.2d 1119, 1121, 1124 (5th Cir.1987) (close corporation bound by prior judgment against controlling individuals because corporation found to be "alter ego" of controlling individuals). There can be no doubt, therefore, that the Succession was adequately represented by Mrs. Smith in the interpleader action. *Cf. Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869 (2d Cir.1991) (estate represented by wife of deceased bound by prior judgment involving close corporation controlled by wife). Accordingly, the Succession is bound by Mrs. Smith's failure to assert her negligence claims as counterclaims in the original interpleader action, and the first delictual action is barred.

---

**6.** In response to a request from the Court, the parties filed with the Court a copy of all of the filings made in relation to the Succession of Rodney G. Smith. Included in those filings was a copy of Rodney G. Smith's last will and testament, which provides for various particular legacies and bequeaths the entire remainder of the estate to June G. Smith.

█ A similar analysis applies to the other federal court claim, *Succession of Rodney G. Smith v. New York Life Insurance Company and Lynwood Broussard,* which was brought only on behalf of the Succession. Although this Court is aware that the Western District Court has already dismissed Mrs. Smith's and the Succession's claims against Lynwood Broussard on account of prescription,[7] *see June G. Smith v. New York Life Insurance Company,* Civil Action No. 6:96–1348, consolidated with 96–1521 (W.D.La. Oct. 3, 1996), the Court notes for the record that it also finds June Smith's and the Succession's delictual claims against Broussard to be barred by res judicata, since the Court finds that Broussard was in privity with New York Life.

All of the allegations against Broussard in the second delictual action are based on acts which he allegedly took in his capacity as an agent of New York Life. The Fifth Circuit has explicitly recognized that privity exists between principals and their agents for purposes of res judicata. *See Russell,* 962 F.2d at 1174 (finding privity for res judicata purposes even where relations between two parties were merely analogous to that of principal and agent); *see also Pelletier v. Zweifel,* 921 F.2d 1465, 1502 (11th Cir.) (finding privity for purposes of res judicata between principal and agent), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Accordingly, the Court finds that the second delictual action is barred entirely by res judicata as well.

While the Court's findings as to the first two delictual actions make it clear that the Court would also find the third delictual action, *June G. Smith v. Lynwood Broussard,* barred by res judicata, in the interest of comity, the Court declines to make an explicit ruling on the issue. For reasons discussed below, the third delictual action, which is still pending in state court, cannot be enjoined by this Court. Thus, the Court finds that concerns of comity and federalism prohibit it from issuing an advisory opinion to the state court as to the res judicata issue.

In light of this Court's findings concerning the applicability of res judicata to the delictual actions pending in federal court, the Court denies Mrs. Smith's request to amend this Court's June 25, 1996 amended judgment so as to "clarify" that the Court's injunction does not preclude Mrs. Smith and Ms. Deshotel from bringing any claims against New York Life or any other party "based on any viable theory of recovery, so long as that action is not directed at the proceeds of [the] life insurance policies."

## D. New York Life's Request for Order and Preliminary and Permanent Injunctions Against the Three Delictual Actions

█ New York Life suggests that it will suffer immediate and irreparable loss if it is forced to defend claims that should have been asserted as counterclaims in the interpleader action and that are now barred. As a consequence, it requests that this Court issue preliminary and permanent injunctions against the three pending delictual actions. New York Life claims that the All Writs Act gives this Court jurisdiction to issue these injunctions. Under the All Writs Act, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It is clear that the All Writs Act empowers federal courts to issue injunctions against proceedings in another court to protect and effectuate a federal court judgment on the basis of res judicata. *See, e.g., Santopadre v. Pelican Homestead & Savings Association,* 937 F.2d 268, 273 (5th Cir.1991) (upholding injunction pursuant to All Writs Act against state court action held to be barred by res judicata). However, courts have repeatedly noted that because of the sensitive nature of interfering with ongoing actions, a "strong and unequivocal showing" that res judicata applies is required for such an injunction to issue. *See, e.g., Golden v. Pacific Maritime Association,* 786 F.2d 1425 (9th Cir.1986); *Bluefield Com-*

---

7. The Court notes that Judge Melancon's ruling is presently subject to a motion for reconsideration, pursuant to Rule 59(e).

*munity Hospital, Inc. v. Anziulewicz,* 737 F.2d 405, 408 (4th Cir.1984).

■ Mrs. Smith objects that this Court lacks jurisdiction to issue the requested injunctions. In support of this position, she notes that all three delictual claims were brought in state court and contends that the injunctions are therefore prohibited under the Anti–Injunction Act, 28 U.S.C. § 2283, which generally prohibits federal courts from interfering with proceedings in the state courts:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C. § 2283.

The Court finds that the Anti–Injunction Act prohibits this Court from issuing an injunction against the second delictual action, *June G. Smith v. Lynwood Broussard,* which is the only claim that is still in state court.[8] The Act does not apply, however, to the two other actions that were removed to federal court, as its plain language applies only to injunctions that "stay proceedings in a State Court." Thus, the Court finds that it does have jurisdiction to issue injunctions against the two delictual actions pending in federal court, pursuant to the All Writs Act.

New York Life contends that the third express exception to the Anti–Injunction Act applies to the state court action—namely that the injunction is necessary to "protect or effectuate" this Court's earlier judgment. This third exception has been dubbed the "relitigation exception" because it empowers federal courts to enjoin state court proceedings that have been previously decided in federal court. The Court finds that the relitigation exception to the Anti–Injunction Act does not apply to the state court delictual action in this case.

The United States Supreme Court has expressly held that, "[t]he relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to *and decided* by the federal court." *Chick Kam Choo v. Exxon Corporation,* 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988) (emphasis added). Moreover, the Court held that "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actually* have been decided by the federal court." *Id.* at 148, 108 S.Ct. at 1690 (emphasis added). The Court further noted that "this prerequisite is strict and narrow." *Id.* In light of the Supreme Court's teachings in *Chick Kam Choo,* the Fifth Circuit has concluded that the relitigation exception to the Anti–Injunction Act applies only to those matters that were *actually* litigated in the federal court and not to those matters that would be precluded under res judicata because they *could have been* litigated. *See Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Services,* 925 F.2d 866, 879–80 (5th Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991) (relitigation exception does not apply even when issue was raised in complaint of original action if it was not actually decided). Since there is no question that the negligence claims that are the subject of the delictual actions were not actually decided by this Court in the original interpleader action, it is clear that the relitigation exception does not apply in this case. The Court therefore refuses to issue an injunction in the second delictual action, which is still in state court, on the grounds that such an injunction is prohibited by the Anti–Injunction Act.

■ In sum, the Court finds that res judicata precludes the two delictual actions pending in federal court, and that federal law permits this Court to enjoin those actions, pursuant to the All Writ Act, in order to protect and effectuate this Court's prior judgment. Courts have repeatedly found

---

8. The Court notes that, while the issue of abstention was not raised by the parties, the doctrine of *Younger* abstention may present an additional barrier to enjoining the state court delictual action. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Wightman v. Texas* *Supreme Court,* 84 F.3d 188 (5th Cir.1996). However, because the Court finds that the Anti–Injunction Act precludes it from issuing the injunction against the state court action, it need not decide the issue of the appropriateness of *Younger* abstention.

that immediate and irreparable injury results from having to defend claims that should be barred. *See, e.g. Santopadre v. Pelican Homestead and Savings Association,* 749 F.Supp. 124, 126–27 (E.D.La.1990), *aff'd,* 937 F.2d 268 (5th Cir.1991) (noting appropriateness of issuing injunction pursuant to All Writs Act to protect and effectuate prior judgments). Accordingly, this Court concludes that New York Life is entitled to the injunction it has requested as to the pending federal delictual claims. The Court also finds, however, that the Anti–Injunction Act precludes it from enjoining the second delictual action, which is still pending in state court. Accordingly,

IT IS ORDERED that June G. Smith's motion to alter or amend this Court's amended judgment is hereby DENIED.

IT IS FURTHER ORDERED that New York Life's motion for preliminary and permanent injunctions is hereby GRANTED in part, and DENIED in part, in accordance with the opinion above.

IT IS FURTHER ORDERED that a permanent injunction be issued enjoining and restraining June G. Smith and the Succession of Rodney G. Smith from proceeding and further prosecuting any matters involved in the civil action entitled *June G. Smith v. New York Life Insurance Company* and *Succession of Rodney G. Smith v. New York Life Insurance Company and Lynwood Broussard,* originally filed by June G. Smith against New York Life in the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana, and removed to the United States District Court of the Western District of Louisiana, Lafayette–Opelousas Division, as Civil Action Nos. 96–1348 and 96–1521.