Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,115-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

B.A. KELLY LAND CO., LLC                    Plaintiff-Appellee

versus

AETHON UNITED BR LP,                    Defendants-Appellants
ET AL.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 160,052

Honorable E. Charles Jacobs, Judge

* * * * *

COOK, YANCEY, KING & GALLOWAY          Counsel for Appellants,
By: John T. Kalmbach                   Aethon United BR LP,
    W. Drew Burnham                    and Aethon Energy
                                       Operating, LLC


COLVIN, SMITH, McKAY & BAYS            Counsel for Appellee
By: James H. Colvin, Jr.
    Cole B. Smith

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**PITMAN, J**.

Defendants-Appellants Aethon United BR LP ("Aethon United"), and Aethon Energy Operating, ("Aethon Operating") LLC, appeal a partial summary judgment in favor of Plaintiff-Appellee B.A. Kelly Land Co., LLC ("Kelly Land").  Appellants also seek review of the trial court's judgment overruling an exception of res judicata.  For the following reasons, we vacate the partial summary judgment.

## FACTS

Kelly Land owns a 160-acre tract of land in Bossier Parish, which makes up one-quarter of two drilling and production units created by the Office of Conservation.  One unit (15 wells) is for the Lower Cotton Valley Zone, Reservoir A ("LCV unit"), and one is for the Haynesville Zone, Reservoir A ("HA unit") (1 well).  The minerals underlying the land were subject to a mineral servitude owned by Dorothy Richardson, who had leased the minerals; but, upon her death on November 11, 2013, the servitude and lease expired and the minerals reverted to the surface owner, Kelly Land.  The land is not subject to a mineral lease.

On November 15, 2013, four days after Richardson's death, Kelly Land sent a letter to J-W Operating Company ("J-W"), the operator of the LCV unit wells at that time, and to Anadarko, the operator of the HA unit well at that time, explaining that the tract was now unleased and requesting well costs and revenue.  Anadarko responded and began sending reports for the HA unit, but J-W did not send reports for the LCV unit wells.

More than two years later, in May 2016, J-W assigned a 90 percent undivided interest in the LCV unit wells and associated leases to Aethon United and a 10 percent interest to a third party, PEO Hayesville Holdco,

LLC.[1]  At the time of the assignment, Aethon United designated Aethon Operating to act as its agent and operator for the 16-unit and alternate-unit wells that had been drilled by prior operators and were producing hydrocarbons.

On December 15, 2017, Kelly Land sent a letter to Aethon Operating demanding that it "[p]rovide the unit well costs and unit production data required to be produced by the unit operator to the owner of an unleased interest in the three units [,]" which it calls the "second demand."  On April 17, 2018, Kelly Land sent Aethon Operating a second letter requesting information, which it characterized as one calling to Aethon Operating's attention to its failure to respond to the second demand, and making further demand on it to comply with Louisiana law by providing the ongoing operating costs and expenses for the units by sworn, detailed, itemized statements.  Upon receipt of the second letter, Aethon Operating responded through a senior landman to find out exactly what information Kelly Land was seeking.  Kelly Land offered to send Aethon Operating an example of a report that a prior operator had sent to it so a similar report could be compiled, but the sample was never delivered.

On September 21, 2018, Kelly Land filed suit against Aethon Operating in federal court ("federal suit") alleging that after it made a demand under the Well Cost Reporting Statute ("the reporting statute"), La. R.S. 30:103.1, Aethon Operating failed to timely provide it with initial and quarterly reports of each well's revenue and expenses.  La. R.S. 30:103.2 requires that the unleased owner also put the operator in default for failing to

---

[1] Although the brief names the company as PEO Hayesville Holdco, LLC, we surmise it is more likely to be Haynesville.

2

provide the report of each well's revenue and expenses and provides for forfeiture of the costs of the well in the event not all requirements of the statutes have been met.[2] Kelly Land alleged that Aethon Operating forfeited its right to recoup its pro rata share of the wells' costs out of production, which it otherwise would have been able to recoup under La. R.S. 30:10.

On August 5, 2019, ten months after the federal suit was filed, Kelly Land filed the instant suit in state court against Aethon Operating asserting the same forfeiture claim, but adding Aethon United as a non-diverse defendant under a principal-agent theory. Without complete diversity, Defendants could not remove to federal court and consolidate the state suit with the federal suit. On October 3, 2019, Aethon Operating and Aethon United filed a declinatory exception of lis pendens, alleging that there was ongoing litigation in federal court on the same issue. The state court overruled the exception, and this court denied writs and declined to exercise its supervisory jurisdiction.

On October 8, 2019, the Honorable Terry A. Doughty, U.S. District Judge, denied Kelly Land's motion for partial summary judgment and found that the letter of December 15, 2017, to Aethon Operating did not comply with the requirements of the reporting statute as a demand letter and that the letter of April 17, 2018, to Aethon Operating, as a forfeiture claim, did not

---

[2] The operator of a unit well is entitled to withhold out of production an unleased owner's pro rata share of the cost of drilling, completing and operating the well until the well generates enough revenue to cover its cost. La. R.S. 30:10. After this point, the unleased owner is entitled to 100 percent of the revenue allocable to his tract, net of his share of operating expenses. The reporting statute, La. R.S. 30:103.1, allows an unleased owner to send a written request to the operator for detailed initial and quarterly reports of the well's costs and revenue. If the operator fails to comply with the request after being placed in default, the operator forfeits his right to demand contribution from the owner of the unleased oil and gas interests for the costs of the drilling operations of the well. La. R.S. 30:103.2.

3

comply as a letter of default as required by La. R.S. 30:103.2.[3]  Because

Kelly Land could not prevail without the requisite written demands, the

federal court indicated that it intended, *sua sponte*, to grant summary

judgment in favor of Aethon Operating as to Kelly Land's forfeiture claim

under the reporting statute.  On December 4, 2019, after giving Kelly Land

another opportunity to brief the matter, the federal court granted partial

summary judgment in Aethon Operating's favor and dismissed with

prejudice the forfeiture claim under the reporting statute (the "federal

judgment").  The federal court noted that Kelly Land's claim for unpaid unit

revenues remained pending.

Kelly Land attempted to add Aethon United to the federal suit, but the

effort was rejected by the federal court.  On January 16, 2020, when the

federal court certified the judgment dismissing Kelly Land's claims for

forfeiture of the well costs as a final and appealable judgment, the court

stated:

> Again, B.A. Kelly chose this forum [i.e. federal court].  The law
> does not allow B.A. Kelly to play fast and loose with the
> Court's jurisdiction once it is exercised and significant judicial
> resources have been expended.  The issue of the sufficiency of
> B.A. Kelly's written demands under the Well Cost Reporting
> Statute has been thoroughly briefed, and this Court has ruled,
> dismissing B.A. Kelly's forfeiture claim with prejudice.  B.A.
> Kelly's forfeiture claim is fully resolved.  Having chosen this
> forum and submitted the issue for decision, the Court will not
> allow B.A. Kelly to make an end run around an adverse ruling.
> The Court and the parties have invested their time and resources
> in this matter.  But for B.A. Kelly's unrelated underpayment
> claim, the court's ruling would be final.
>
> By designating its December 4, 2019 ruling and order as a
> partial final judgment under Rule 54(b), the Court will give its
> ruling <u>res judicata</u> effect and hopefully allow the parties to
> avoid the wasteful, duplicative, and vexatious re-litigation of
> the exact same issue in a different forum.  <u>See, e.g.</u> 10 Fed.

---

[3] The federal court did not address Kelly Land's first letter to J-W.

4

Prac. & Proc. Civ. §2659, n.24 (4th ed.) (explaining that certification under Rule 54(b) may be proper to produce claim-preclusive effect in another forum); *Downing v. Riceland Foods, Inc.*, 810 F. 3d 580, 587 (8th Cir. 2015) (holding that res judicata effect weighs heavily in favor of certification under Rule 54(b) when the court and the parties have invested significant resources in reaching its ruling.

Kelly Land appealed the federal court's decision to the U.S. Court of Appeals for the Fifth Circuit, and oral argument was held on December 4, 2020. The parties are awaiting that ruling.

Because the federal court had ruled on the issue and it was deemed a final and appealable judgment, on March 2, 2020, Aethon Operating and Aethon United filed an exception of res judicata in the state court proceedings. On June 29, 2020, the state court overruled it and found that in order to sustain an exception of res judicata, there must exist "a valid and final judgment … conclusive between the same parties." La. R.S. 13:4231. The state court noted that the state suit includes more than one defendant, i.e., Aethon United, in addition to Aethon Operating, whereas the federal suit only pertained to Aethon Operating. The state court opined that in order to sustain the exception, the judgment must be rendered by a court with jurisdiction over both the subject matter and the parties to the litigation. It stated that because Aethon United was not a named party in the federal suit, the Western District for the State of Louisiana did not have jurisdiction over it. Further, because the suits in the different courts did not concern identical parties, the judgment in the federal court could not have any effect as to the unnamed party. The state court also stated that a judgment is not final until all appeal delays have run. At the time of the ruling on the exception of res judicata, the judgment in favor of Aethon Operating was still pending on

5

appeal in federal court; thus, the state court found that it was not final. For those reasons, the state court overruled the exception of res judicata.

After the exception of res judicata was overruled by the state court, Kelly Land filed a motion for partial summary judgment on its forfeiture claim. A hearing was held on November 2, 2020. In direct contradiction to the federal court ruling, the state court granted the motion for partial summary judgment and ruled that Kelly Land's letters, first to J-W in 2013, and those to Aethon Operating in December 2017 and April 2018, met the requirements of the reporting statute and triggered the forfeiture penalties. The state court further found that when J-W assigned its interest to Aethon United, and Aethon United allegedly assumed any liability J-W had, both Aethon Operating and Aethon United were liable to Kelly Land for forfeiture of its share of the wells' costs that Aethon Operating had recouped out of production during its period of operatorship. The state court also found that they were liable to Kelly Land for the well costs that J-W had recouped out of production during its period of operatorship.

Appellants appeal the judgment of the state court granting partial summary judgment and request that res judicata effect be given to the federal court's judgment that was rendered in their favor unless or until that judgment is reversed or modified on appeal.

## DISCUSSION

Aethon Operating and Aethon United argue that the trial court erred by failing to give res judicata effect to the federal court judgment and by ignoring this court's clear precedent concerning the preclusive effect of a final federal judgment in a state proceeding. They assert that the four elements necessary for a court to find that res judicata applies are present in

the instant suit and that because the state court overruled their exception, the parties have had to relitigate the same issues in both courts. This has resulted in vexatious and expensive litigation and conflicting judgments being rendered.

Aethon Operating and Aethon United further argue that the state court erred in allowing the merits of the case to be reargued and decided in state court because not only did the state court render a judgment that was completely contrary to that of the federal court, it also found that they were liable for the sums J-W allegedly owed to Kelly Land. Had the exception of res judicata been sustained, the state court would not have even been presented with that issue for determination. For these reasons, they contend that the exception of res judicata should have been sustained, the federal judgment given effect in the state court and the partial summary judgment vacated.

Kelly Land argues that writs were denied from two judgments of the state court in this case—the first concerned the exception of lis pendens and the second, the exception of res judicata. Kelly Land claims that this court's ruling on the writs rejected a stay of this action based on lis pendens and barred any res judicata effect of the federal district court ruling which remains on appeal to the Fifth Circuit.[4]

---

[4] While the actions taken in both writ applications were "writ denied," the language in the rulings also states that this court declined to exercise its supervisory jurisdiction in both writs. This means that the merits of the writ applications were not addressed even though the trial court's decision in each case was arguably incorrect. Because a resolution of the issues presented would not have resulted in the termination of the case, the writ was actually not considered. *Herlitz Const. Co. v. Hotel Invs. of New Iberia, Inc.*, 396 So. 2d 878 (La. 1981).

Kelly Land also argues that Louisiana jurisprudence has never allowed res judicata to rest upon a judgment that remains pending on appeal and claims that our statute, La. R.S. 13:4231, provides that "a valid and final judgment is conclusive between the same parties, except on appeal." It also argues that none of the cases cited by Appellants in support of their arguments concern a judgment rendered by a U.S. district court, but, instead, are judgments that have been reviewed by a federal appellate court prior to being given res judicata effect in state court.

The res judicata effect of a prior judgment is a question of law that is reviewed *de novo*. *City of Bastrop v. Harris*, 50,727 (La. App. 2 Cir. 6/22/16), 198 So. 3d 163.

Louisiana's res judicata statute provides that if a judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action. La. R.S. 13:4231. Moreover, a judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to the judgment. *Id*.

Federal law of res judicata governs the preclusive effect of a federal judgment in a subsequent state court action. *Pilié & Pilié v. Metz*, 547 So. 2d 1305 (La. 1989). A party faced with relitigation of a federal judgment in a state court proceeding may plead the federal judgment as res judicata. *Id*. If the state court refuses to recognize the proper scope of the federal judgment, the party may appeal through the state courts and ultimately seek review in the U.S. Supreme Court. *Id*. Federal law must be

applied in determining the basic res judicata effects of the diversity judgment. *Id. See also Bobby and Ray Williams P'ship, L.L.P. v. Shreveport Louisiana Hayride Co., L.L.C.*, 38,366 (La. App. 2 Cir. 9/22/04), 882 So. 2d 676, *writ denied*, 04-2636 (La. 12/17/04), 888 So. 2d 875.

Under federal law, res judicata is appropriate if: 1) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits. *Paradise Vill. Children's Home, Inc. v. Liggins*, 38,926 (La. App. 2 Cir. 10/13/04), 886 So. 2d 562, *writ denied*, 05-0118 (La. 2/4/05), 893 So. 2d 884, *citing Ellis v. Amex Life Ins., Co.*, 211 F. 3d 935 (5th Cir. 2000). The phrase res judicata refers to the distinctive effects of a judgment separately characterized as claim preclusion and issue preclusion. *Id.* Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. *Id.* Issue preclusion bars the relitigation of issues actually litigated, and essential to a judgment, in a prior litigation between the same parties. *Id.* Under federal law, it is the facts surrounding the transaction or occurrence which operate to constitute a cause of action for purposes of res judicata, not the legal theory upon which a litigant relies. *Id.*

Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether relitigation of the claim raises the same issues as the earlier suit. *Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). Issue preclusion, by contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even

9

if the issue recurs in the context of a different claim. *Id.* By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*, *citing Montana v. United States,* 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

In regard to a claim of res judicata, federal law holds that privity exists for res judicata purposes between principals and their agents. Res judicata may apply to a nonparty, as long as it is in "privity" with a named party to the original judgment. *New York Life Ins. Co. v. Deshotel,* 946 F. Supp. 454 (E.D. La. 1996), *aff'd*, 142 F. 3d 873 (5th Cir. 1998). Privity is nothing more than a legal conclusion that the relationship between the one who is a party on the record and the nonparty is sufficiently close to afford application of the principle of preclusion. *Id.*, *citing SW Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F. 2d 84 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S. Ct. 117, 54 L. Ed. 2d 93 (1977).

Federal Rule of Civil Procedure Rule 54(b) states as follows:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"It has become clear in the federal courts that res judicata ordinarily attaches to a final lower-court judgment even though an appeal has been taken and remains undecided." 18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4227 (3 ed. 2021 update).

In the case at bar, the four essential elements for giving the federal judgment res judicata effect have been met. The judgment rendered in federal court involved the same parties as those in the state court. Although only Aethon Operating had been sued in federal court, Kelly Land sued Aethon United in state court as Aethon Operating's principal. This satisfies the requirement of "same parties" because they are in privity. There is no question that the federal court is a court of competent jurisdiction. The federal court granted a partial summary judgment in Aethon Operating's favor and certified the judgment as a partial final and appealable judgment under Fed. R. Civ. P. 54(b). The causes of action are the same in each suit and the claims arise out of a common nucleus of operative facts. The suits are virtually identical, and both seek a forfeiture judgment under the reporting statute relating to the same wells and based on the same written demands. For these reasons, Appellants' argument has merit, and the judgment in state court overruling the exception of res judicata is reversed.

As a result of this ruling that the federal court's judgment should be given res judicata effect and the partial summary judgment deemed a final judgment, the state court's partial summary judgment in favor of Kelly Land, which was contradictory to the judgment rendered by the federal court, is hereby vacated.

Although Appellants have raised four assignments of error, the vacating of the partial summary judgment on the basis that res judicata

11

applies negates the need for discussion of the other issues raised, and they are pretermitted.

## CONCLUSION

The peremptory exception of res judicata filed by Aethon United BR LP and Aethon Energy Operating, LLC. is sustained and the judgment of the federal court granting partial summary judgment is given res judicata effect. The federal court ruled on the merits of the case, specifically, the efficacy of the letters written by B.A. Kelly Land Co., LLC., as demands for forfeiture of well costs recouped by the well operators, and dismissed the suit with prejudice. B.A. Kelly Land Co., LLC., is precluded from litigating the same issues or claims in the state court. The partial summary judgment granted by the state court in favor of B.A. Kelly Land Co., LLC, is vacated. Costs of the appeal are assessed to B.A. Kelly Land Co., LLC.

**PARTIAL SUMMARY JUDGMENT VACATED**.