**COMMERCIALIZADORA PORTIMEX
S.A. DE CV**

v.

**ZEN–NOH GRAIN CORPORATION**

No. Civ.A. 02–1185.

United States District Court,
E.D. Louisiana.

June 7, 2005.

Christopher Ogilvie Davis, Phelps Dunbar, LLP, New Orleans, LA, Robin C. Minturn, Robin C. Minturn, Attorney at Law, Nashville, TN, for Commercializadora Portimex, S.A. de CV.

James G. Burke, Jr., David Louis Carrigee, Paul N. Vance, Timothy Alexander Porteous, Burke & Mayer, William Breen Hidalgo, Steen & Williamson, LLC, New Orleans, LA, for Zen–Noh Grain Corporation.

### ORDER AND REASONS

VANCE, District Judge.

Defendant Zen–Noh Grain Corporation moves for issuance of a preliminary and permanent injunction to prohibit plaintiff, Commercializadora Portimex, S.A. de C.V., from proceeding against Zen–Noh in a suit Portimex filed in Mexico. The Court ordered the trial on the merits of the application for permanent injunctive relief consolidated with the application for a preliminary injunction and held a hearing on the request for injunctive relief on June 7, 2005. For the following reasons, the Court GRANTS defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Portimex is a Mexican corporation engaged in the importation of grain, including sorghum. Zen–Noh is a Louisiana corporation that exports grain, including sorghum, from its grain elevator on the Mississippi River in Convent, Louisiana. In two separate contracts, Portimex agreed to buy and Zen–Noh agreed to sell two shipments of sorghum. Because Portimex intended to sell the sorghum for use as animal feed, it specified that the sorghum contain a maximum 100 parts per billion of zearlenone, to be certified by an independent laboratory. Zearlenone is a

mycotoxin, a by-product of mold, that can cause harm to animals if ingested.

Zen–Noh loaded the first shipment of sorghum in 18 sublots on to Portimex's barge on December 20, 2001. Zen–Noh selected Thionville Laboratories, Inc. to test and certify the shiplot for, among other things, zearlenone in excess of 100 ppb. Thionville reported that each sublot tested "negative" for zearlenone in excess of 100 ppb.

Zen–Noh loaded the second shipment of sorghum on to the M/V MELINI on February 2 and 3, 2002. The shiplot was comprised of 18 sublots. Zen–Noh again selected Thionville to test and certify the sorghum. Because Portimex was concerned about the level of zearlenone in the shipment, it obtained samples sealed at loading and sent these to CII Laboratory Services, an independent lab in Kansas City, Missouri.

The MELINI left port on February 3, 2002, and arrived in Tuxpan, Mexico several days later. On February 6, 2002, Thionville reported its test results. Using the method required by Portimex, Thionville determined that one sublot contained 180 ppb zearlenone and the remaining 17 sublots contained less than 100 ppb. Thionville determined that the mathematical average of the 18 test results equaled 20 ppb, so Thionville certified that the sorghum contained less than 100 ppb. Portimex could have attended Thionville's testing, but it did not. Portimex could have requested hard copies of Thionville's laboratory results, but it did not. On February 8, 2002, CII reported that eight of the 18 sublots contained zearlenone in excess of 100 ppb. CII also conducted a 19th test on a composite sample drawn from the entire shiplot loaded on to the MELINI. The test of the composite sample indicated that zearlenone did not exceed 100 ppb.

When the MELINI arrived in Tuxpan, buyers requested that the sorghum be tested for zearlenone. The test results revealed zearlenone levels greater than 100 ppb, and the buyers refused to purchase the sorghum.

On April 19, 2002, Portimex filed a lawsuit in this Court against Zen–Noh in which it alleged that Zen–Noh breached both contracts by delivering sorghum with zearlenone in excess of the contractual limit. On September 12, 2002, the Court granted defendant's motion for summary judgment as to the first shipment of sorghum.[1] After undertaking a choice of law analysis and determining that Louisiana law governed the interpretation of the contract, which neither party disputed, the Court found that the contract unambiguously stated that the sorghum was to be tested for compliance with contract specifications at the time that it was loaded on to the barge in Louisiana. The Court also found that Zen–Noh's testing and the levels of zearlenone in the sorghum when it was shipped complied with Zen–Noh's contractual obligations. Finally, the Court determined that Portimex had agreed to be bound by Thionville's determination that the sorghum complied with the contract specifications and that Portimex's own tests, conducted after the sorghum was unloaded in Mexico, did not raise a genuine issue of material fact as to Zen–Noh's compliance with the contract. The Court subsequently denied Portimex's Rule 59(e) motion to alter or amend its judgment because the motion had no merit.

The Court held a three-day trial on Portimex's claims regarding the second shipment of sorghum. In an Order and Reasons dated November 1, 2002, the Court, again applying Louisiana law without objection from the parties, found that Zen–

---

**1.** Civil Action No. 02–1185, R. Doc. 50, Order and Reasons dated Sep. 12, 2002.

Noh also fully complied with its contractual obligations to Portimex in this shipment.[2] The Court also rejected as completely unfounded Portimex's attempts to demonstrate that Zen–Noh, Thionville, or both, engaged in bad faith or fraud. Accordingly, the Court entered judgment against Portimex and dismissed its complaint with prejudice on November 6, 2002. Portimex filed a Notice of Appeal on November 20, 2002, but later voluntarily dismissed its appeal.

Because Portimex allegedly threatened to relitigate its claims in Mexico if it were unsuccessful in this case, Zen–Noh moved for a permanent injunction to prohibit Portimex from instituting or maintaining additional lawsuits in another jurisdiction pertaining to the shipments of sorghum at issue in this case. In an Order and Reasons dated December 3, 2002, the Court recognized that it had the power to enjoin persons subject to its jurisdiction from prosecuting foreign suits in certain circumstances.[3] Nevertheless, the Court denied Zen–Noh's motion as premature, because Portimex had only threatened to file a suit in a foreign jurisdiction.

On December 19, 2002, Portimex sued Thionville and Thionville's insurer in Louisiana state court for negligence, breach of contract, violation of the Louisiana Unfair Trade Practices Act, breach of covenant of good faith and fair dealing, detrimental reliance, and intentional or negligent misrepresentations. Thionville filed a third-party complaint against Zen–Noh in the state proceedings, and Zen–Noh removed the case to this Court. On June 14, 2002, the Court remanded the case to state court.

On February 10, 2004, Portimex sued Zen–Noh in the Sixth District Court for Civil Matters of the Federal District of Mexico. Zen–Noh was served with the complaint on May 10, 2005 and filed a motion for a preliminary and permanent injunction on May 24, 2005. Zen–Noh asserts that Portimex's Mexican lawsuit is based on the same two sorghum shipments involved in this case, that it asserts the same breach of contract claims, and that it seeks the same damages as Portimex asserted before this Court. Zen–Noh contends that an antisuit injunction is therefore appropriate to protect this Court's final judgment on these issues. Portimex argues that an injunction is inappropriate because its lawsuit in Mexico asserts claims under an international treaty.

## II. DISCUSSION

### A. Standard to Enjoin Foreign Litigation

 Generally, to obtain a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the nonmovant; and (4) that the injunction will not undermine the public interest. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir.2003). For a court to grant a permanent injunction, a plaintiff must prove actual success on the merits, and it must also prove the three remaining factors that must be proved to obtain a preliminary injunction. *See Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has "clearly carried the burden

2. Civil Action NO. 02–1185, R. Doc. 105, Order and Reasons dated Nov. 1, 2002.

3. Civil Action No. 02–1185, R. Doc. 109, Order and Reasons dated Dec. 3, 2002.

of persuasion" on all four requirements. *Karaha Bodas Co.*, 335 F.3d at 363.

 A foreign antisuit injunction, such as the one requested here, is a special application of these injunction rules. *See id.* at 364 (noting that a foreign antisuit injunction is a "particular subspecies of preliminary injunction"). Thus, the Fifth Circuit has held that "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions." *Id.* It is well established that federal courts are empowered to enjoin persons subject to their jurisdiction from prosecuting foreign suits. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir.1996). An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles. *Id.* at 627 n. 9 (citing *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir.1970)). Before issuing an injunction against a foreign lawsuit, however, the Court must "balance domestic judicial interests against concerns of international comity." *Karaha Bodas*, 335 F.3d at 366. The Fifth Circuit has adopted a test that weighs "the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity." *Id.* (citing *Kaepa, Inc.*, 76 F.3d at 627). In applying the test, the Fifth Circuit has rejected the approach taken by some other circuits, which "elevates principles of international comity to the virtual exclusion of essentially all other considerations." *Kaepa, Inc.*, 76 F.3d at 627. Instead, the Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas Co.*, 335 F.3d at 366.

**B. Analysis**

**1. Domestic Judicial Interests**

 To determine whether proceedings in another forum constitute vexatious or oppressive litigation that threatens the Court's jurisdiction, the Court considers whether the following interrelated factors are present: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicitous of the litigation in the United States. *Id.*

 Applying these factors, the Court finds Portimex's proceeding in Mexico constitutes vexatious and oppressive litigation that threatens the Court's jurisdiction. Portimex chose this Court in which to litigate its contract claims to final judgment in the first instance. Zen–Noh is a Louisiana company and because it has already defended Protimex's breach of contract claims on the same transactions and prevailed in final judgments in this Court, it would be an inequitable hardship to require Zen–Noh to devote the time and expense to defend itself against the same claims in Mexico. *See Home Healthcare Affiliates of Mississippi, Inc. v. North American Indem. N.V.*, No. 1:01CV489–D–A, 2003 WL 22244382, at *3 (N.D.Miss. Aug.7, 2003) (noting that "it would definitely be an inequitable hardship for the Plaintiffs, who are Mississippi companies, to effectively represent their interests" in an action in Belgium that raised the same issues as the action before the court). Further, Zen–Noh has not itself initiated foreign legal action related to this dispute. Such voluntary invocation of a foreign forum, which is absent here, would militate against a finding that litigating a foreign action amounts to an inequitable hardship. *See Karaha Bodas Co.*, 335 F.3d at 368 (considering, in determining whether for-

eign litigation constitutes an inequitable hardship, whether party seeking injunctive relief had itself brought foreign proceedings relating to the same dispute).

As to the second factor, whether the foreign suit may delay an efficient determination, it is clearly inefficient to permit parties to thwart the finality of judgments by relitigating the same claims once they have been finally adjudicated. Although this factor is often examined in cases in which a party seeks a injunction to stop foreign litigation when another suit on the same claims is pending, efficiency concerns are no less implicated when a suit has gone to judgment, and the party who lost seeks to start the process all over again in another jurisdiction.

Third, the Court finds that the litigation in Mexico is duplicative of the litigation that took place before this Court. Zen–Noh's counsel has represented to the Court, and the Court's examination of the complaint confirms, that Portimex's Mexican lawsuit is based on the same facts and transactions and seeks the same contract damages that were involved in this case. (*See* Def.'s Ex. 1, Portimex Compl. at ¶ 51). Although Portimex contends that the Mexican lawsuit is not duplicative because it alleges claims under the United Nations Convention on Contracts for the International Sale of Goods, Portimex's argument is meritless. Portimex cannot escape the duplicative nature of the breach of contract claims it has asserted in Mexico, which plainly involve the same parties, the same facts and the same causes of action, merely by arguing that different law applies to those contract claims. In both actions, Portimex alleged that Zen–Noh breached the two contracts for the sale of sorghum. Application of the Convention to those allegations does not give rise to any new or different causes of action. Further, even though Portimex had a full and fair opportunity in this Court to argue that the Convention should apply to its breach of contract claims, it never did so, nor did it dispute the Court's application of Louisiana law. *Cf. Bethell v. Peace,* 441 F.2d 495, 497 (5th Cir.1971) (holding that a party relying on foreign law must plead and prove it, and party's failure to do so entitles court to assume that foreign law is the same as forum law).

■ Because Portimex's breach of contract action in Mexico arises from the same transactions and alleges the same causes of action, it is duplicative and would be barred by the doctrine of res judicata. The rule governing which law applies to determine the preclusive effect of an earlier judgment by a district court sitting in diversity has recently been changed. The Fifth Circuit has recognized that in determining the preclusive effect of a prior judgment, the Supreme Court's decision in *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), now requires federal courts to apply the law of the forum state, unless the state's law is incompatible with federal interests, when the basis of the court's jurisdiction was diversity of citizenship. *American Home Assurance Co. v. Chevron, USA, Inc.,* 400 F.3d 265, 271 n. 20 (5th Cir.2005) (departing from rule applied in cases like *Mowbray v. Cameron County,* 274 F.3d 269, 281 (5th Cir.2001), and citing *Semtek Int'l, Inc.,* 531 U.S. at 508, 121 S.Ct. 1021, to support proposition that federal common law, *i.e.,* state law unless incompatible with federal interests, governs claim-preclusive effect of a dismissal in a diversity case). Accordingly, the Court, as a court sitting in diversity, applies Louisiana law to determine the preclusive effect of its prior judgments.

Louisiana's res judicata statute provides: Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on ap-

peal or other direct review, to the following extent: ...

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

LA.REV.STAT. ANN. § 13:4231. Under the statute, a second action is precluded when a first action has proceeded to judgment and: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La.2003). The central inquiry under the statute is "whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action." *See id.*; LA.REV.STAT. ANN. § 13:4231 cmt. (a).

Here, Portimex's claims against Zen–Noh in the Mexican litigation satisfy all of the elements for res judicata under section 13:4231. Portimex's Mexican litigation involves the same parties and claims on the same transactions that Portimex litigated to final, valid judgments in the first action. Specifically, Portimex's breach of contract claims in Mexico arise out of the same two contracts for the sale of sorghum that were the subject matter of the litigation in this Court.

Further, Portimex has not argued that it could not have asserted that the Convention governed its breach of contract claims in the original action. Nor has it asserted that a contract claim arose under the Convention after it went to judgment in the first suit. Accordingly, the two cases Portimex relied on at the hearing to support its res judicata position do not alter the Court's analysis. First, both cases applied federal law of preclusion, which, as the Court has noted, no longer governs the preclusive effect of the Court's judgments in a diversity case. Second, the holdings in both cases were based on the unremarkable proposition that conduct that occurs after the judgment in the original action may gave rise to new causes of action. *See Kilgoar v. Colbert County Bd. of Educ.*, 578 F.2d 1033, 1035 (5th Cir.1978) (holding that, "to the extent [plaintiff's present action] is based on conduct subsequent to the [original action], [it] is not barred by the prior litigation"); *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1318 (5th Cir.1970) (holding that new claims for damages could arise from actions that occurred subsequent to the judgment in the original action). Because Portimex has not shown that its suit in Mexico is based on conduct that occurred subsequent to final judgment against it in this Court, its reliance on these cases is misplaced. Its Mexican claims are clearly duplicative and barred by res judicata as measured by Louisiana law.

Finally, Portimex was on notice that a vexatious effort to relitigate the same claims could be enjoined by this Court. When the Court denied Zen–Noh's first request for an injunction, the Court recognized that it had the power to issue an injunction against foreign litigation in certain circumstances. The Court denied Zen–Noh's motion primarily because Portimex had only threatened to file a suit in a foreign jurisdiction, and the single threat did not amount to harassment. Portimex has now carried out its threat. Accordingly, the Court finds that Portimex's Mexican lawsuit constitutes vexatious or oppressive litigation and that this Court's

interest in protecting its jurisdiction and final judgments weighs in favor of enjoining the prosecution of the Mexican proceeding.

### 2. Interests in International Comity

■ The Court must now weigh its domestic judicial interests against interests of international comity. Although the Court recognizes the importance and sensitivity of principles of international comity, an antisuit injunction against foreign litigation in this case does not implicate these concerns. First, this case involves a contractual dispute between two private parties that does not implicate any public international issues. *See Kaepa, Inc.,* 76 F.3d at 627 (stating that no public international issue was implicated by the case because it was a contractual dispute between two private parties). Second, the litigation between the parties on the breach of contract issues has "been long and firmly ensconced within the confines of the United States judicial system," and no prior litigation has taken place in international fora, all of which indicates that international comity concerns are less salient. *See id.; cf. Karaha Bodas,* 335 F.3d at 371 (distinguishing *Kaepa* on ground that prior steps in resolving dispute had taken place in international fora). Because this case involves private parties that have previously litigated their contractual disputes to final judgments in the United States, concerns of international comity do not outweigh the Court's interest in prohibiting duplicative litigation and in protecting its jurisdiction and final judgments.

Courts in other circuits have also recognized that international comity concerns about issuing an antisuit injunction against foreign litigation are lessened when a case has already proceeded to final judgment on the merits in the domestic court. *See Paramedics Electromedicina Comercial, Ltda. v. GE Medical Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir.2004)

("[W]here one court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force."); *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 927–28 (D.C.Cir.1984) (once court reaches a judgment, less justification exists to permit second action on the same issues, and court "may freely protect the integrity of its judgments" to the extent necessary to provide full justice to litigants); *Farrell Lines Inc. v. Columbus Cello–Poly Corp.,* 32 F.Supp.2d 118, 131 (S.D.N.Y.1997) ("[A]lthough it is true that the foreign court should ideally determine whether a judgment in a domestic court precludes the foreign litigation, the standard for enjoining foreign litigation after the domestic court reaches judgment is lower."). Further, although Portimex points out that a foreign judge is competent to decide whether principles of *res judicata* apply, that does not negate the Court's interest in protecting its jurisdiction and its judgments. *See Paramedics Electromedicina Comercial, Ltda.,* 369 F.3d at 654 (doctrine of res judicata does not obviate need for injunctive relief against relitigation in second forum because foreign court might decline to give res judicata effect to United States judgment since United States courts "are not obliged" to give res judicata effect to foreign judgments). For these reasons, principles of international comity do not outweigh the Court's interest in preventing vexatious and duplicative litigation and in protecting its jurisdiction and final judgments. Accordingly, the Court finds that Zen–Noh's motion to enjoin the litigation filed by Portimex in Mexico should granted.

### 3. Traditional Injunctive Relief Test

The Court's discussion establishes that Zen–Noh has proven actual success on the merits, which in the case of a foreign

antisuit injunction are whether the factors specific to an foreign antisuit injunction weigh in favor of granting that injunction. *See Karaha Bodas Co.*, 335 F.3d at 364 n. 19. To the extent that the remaining factors of the traditional test for injunctive relief apply in the situation of a foreign antisuit injunction, the Court finds that those factors are also satisfied. Zen–Noh will suffer irreparable harm from having to relitigate in a foreign forum claims it has already fully litigated and defeated in this Court. *New York Life Ins. Co. v. Deshotel*, 946 F.Supp. 454, 465 (E.D.La.1996) ("Courts have repeatedly found that immediate and irreparable injury results from having to defend claims that should be barred."). This threatened injury outweighs any potential harm to Portimex from the injunction, which merely prevents Portimex from obtaining two chances to litigate its breach of contract claims. Finally, the Court finds that the injunction will not undermine the public interest, which in this case is embodied by the Court's strong interest in protecting its own jurisdiction and judgment.

## C. Relief

Zen–Noh requests that the Court preliminarily and permanently enjoin all litigation that involves the same two shipments of sorghum that Portimex may institute against Zen–Noh in any jurisdiction. This remedy is overly-broad. *See Home Healthcare Affiliates of Mississippi v. North American Indem. N.V.*, 2003 WL 22244382, at *4 n. 4 (N.D.Miss.2003). The Court will limit the relief it grants to the specific circumstances presented by Zen–Noh's motion.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for a preliminary and permanent injunction. The Court ORDERS that Commercializadora Portimex, S.A. de C.V. and its principals

and agents are preliminarily and permanently enjoined from pursuing the action filed in the Sixth District Court for Civil Matters of the Federal District of the United Mexican States, entitled *Comercializadora Portimex, S.A. de C.V. vs Zen–Noh Grain (Export) Division of Zen–Noh Grain Corporation.*